## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

SHORELIGHT, LLC
Two Seaport Lane, Suite 500
Boston, MA 02210

         *Plaintiff,*

UNITED STATES
DEPARTMENT OF STATE
2201 C St. NW
Washington, D.C. 20520

         *Defendant.*

Case No.

**Complaint for Injunctive Relief
Under the Freedom of Information
Act**

### COMPLAINT FOR INJUNCTIVE RELIEF

1.      Plaintiff Shorelight, LLC ("Shorelight") brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against Defendant, U.S. Department of State ("DOS or "State Department") to compel Defendant to produce documents and data in compliance with FOIA.

2.      On August 17, 2022, Plaintiff submitted a FOIA request (FOIA Case Number F-2022-11858) to DOS requesting F-1 Nonimmigrant Visa Refusal Statistics by Post and Nationality for Fiscal Year 2021 and for FY 2022.  *See* **Exhibit A**, FOIA Request to State Department (dated August 17, 2022).  This request is still pending although expedited processing was denied.  *See* **Exhibit B**, Ref: F-2022-11858, Freedom of Information Act Acknowledgement from State Department (dated August 22, 2022).

3.      On August 25, 2022, Plaintiff submitted a FOIA Appeal. *See* **Exhibit C**, FOIA Appeal to State Department (dated August 25, 2022).  This request is still pending although expedited processing was denied as part of the appeal.  *See* **Exhibit D**, Ref: A-2022-00371, Freedom of Information Act Appeal Response from State Department (dated September 16, 2022).

4.      The information requested is a topic of significant public importance that has raised substantial questions about whether the United States is refusing a significantly higher percentage of student visa applications in certain countries than in past years. *See*, e.g., Parija Kavilanz, *Sharp Drop in International Students Worries Some U.S. Colleges*, CNNMoney.com          (Mar.          14,          2018)          available          at https://money.cnn.com/2018/03/12/news/economy/international-student-visa college/index.html; Laura Meckler & Melissa Korn, *Visas Issued to Foreign Students Fall, Partly Due to Trump Immigration Policy*, Wall Street Journal (Mar. 11, 2018) available at https://www.wsj.com/articles/visas-issued-to-foreign-students-fall-partly-due-to-trump-immigration-policy-1520766000.

5.      Additionally, access to this requested information increases Shorelight's ability to accurately advise universities, students, and other interested stakeholders on the likelihood of international student visa outcomes—outcomes that have a far-reaching impact on many more individuals and entities than just the individual F-1 student. The Brookings Institution explained:

> The  Trump administration had instilled a significant degree of unpredictability for international students and their schools . . . lower interest from international students during the Trump administration raised concerns for schools and employers in the U.S., as the decline of international student enrollment cost the United States nearly $12 billion and over 65,000 jobs since

2016, in addition to losing out on other benefits of having international students in U.S. schools.

Dan Berger, *et al. Report: [Four] Ways the Biden Administration Can Improve the Employment-Based Immigration System Without Congress*, Brookings.edu (Jan. 28, 2021) *available at* https://www.brookings.edu/research/4-ways-the-biden-administration-can-improve-the-employment-based-immigration-system-without-congress/.

6.      Ensuring this information be made publically available and easily accessible is a priority for the Biden Administration. The National Origin-Based Antidiscrimination for Nonimmigrants Act ("NO BAN Act"), which was passed by the U.S. House of Representatives on April 21, 2021, evidences this priority. If enacted, the NO BAN Act would mandate the U.S. Secretary of State formally report the number of foreign applicants whose U.S. visas were approved, are still pending, or were denied, per reporting period. *See* National Origin-Based Antidiscrimination for Nonimmigrants Act, NO BAN Act, H.R. 1333, 117th Cong. § 4 (2021), *available at* https://www.congress.gov/bill/117th-congress/house-bill/1333/text (no action taken in the Senate as of May 3, 2021).  The bill also proscribes that this data be further broken down by visa category and applicant country of origin. *Id.*

7.      Although critical for the nation's future, its enactment is tenuous at this stage. Therefore, time is of the essence for Shorelight, as schools across the country need to prepare for the upcoming 2023 intake, for which the academic application and admission process (and the student visa process) is now underway at the vast majority of U.S. colleges and universities. *See, e.g.*, Stuart Anderson, *The Outlook On H-1B Visas And International Students In* 2021, Forbes.com, *available at* https://www.forbes.com/sites/stuartanderson/2021/01/04/the-outlook-on-h-1b-visas-and-international-students-in-2021/?sh=72a106fdb44d (last visited September 19, 2022) (Although focused on H-1B visa data, the article's conclusion underscores Plaintiff's

argument: "[a]pproximately 75% to 80% of full-time graduate students in key technology fields at U.S. universities are international students. With first-time freshman enrollment down 13% in Fall 2020 for all students, U.S. companies will face further hiring difficulties in the coming years[]").

8.      Plaintiff's FOIA request was entitled to expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I). *See also* 22 C.F.R. § 171.11(f)(2) and (3).

9.      DOS unlawfully denied Shorelight's right to expedited processing of FOIA request F-2022-11858. *See* **Exhibit D**, Ref: A-2022-00371, Freedom of Information Act Appeal Response from State Department (dated September 16, 2022).  Plaintiff therefore respectfully requests that the Court compel the U.S. Department of State to process its FOIA request seeking non-immigrant F-1 student visa refusal statistics by post and nationality for Fiscal Years 2021 through 2022 on an expedited basis.  Indeed, these statistics are already in DOS's possession and are readily available to be released with very little effort or resource expenditure on the part of the U.S. Department of State.

10.     Moreover, Plaintiff prevailed before this Court on virtually the same set of facts in both 2019 (Civil Action Number 19-cv-00282) and in 2021 (Civil Action Number 21-cv-01490) requesting the same data from the State Department for the same purpose as before. *See* **Exhibit E**, DOS Response to FOIA Request, Case No. F-2018-06587 (dated April 8, 2019) and DOS Response to FOIA Request, Case Nos. F-2021-02037/FL-2021-00491 (dated July 26, 2021).

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the FOIA statute, 5 U.S.C. § 552(a)(4)(B) ("[o]n complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding

agency records and to order the production of any agency records improperly withheld from the complainant[]") and the federal question jurisdiction statute, 28 U.S.C. § 1331.

12.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency. *See* supra ¶ 9.

## PARTIES

13.     Plaintiff Shorelight, LLC is a limited liability corporation incorporated under the laws of Delaware and based in Boston, Massachusetts.  Shorelight exclusively partners with universities that place a high value on reaching out to top students across the globe and growing their international student body. *See* Shorelight Home Page, *https://shorelight.com/universities/* (last visited September 19, 2022); *see also* Jim Morrison, *5 Minutes With . . . Tom Dretler of Shorelight*, Boston Business Journal (Aug. 20, 2020), *available at* https://www.bizjournals.com/boston/news/2020/08/20/5-minutes-with-tom-dretler-of-shorelight.html. Shorelight currently works with 22 U.S. universities—Adelphi University, American University, Auburn University, Auburn University at Montgomery, Cleveland State University, Gonzaga University, Florida International University, Louisiana State University, University of South Carolina, University of Massachusetts at Boston, University of Massachusetts Amherst, University of Central Florida, University of Dayton, University of Illinois at Chicago, University of Kansas, University of Mississippi, University of the Pacific, University of Utah, American Collegiate LA (UCLA's continuing education/extension school), American Collegiate DC (American University's continuing education/extension school), American Collegiate Live (Shorelight's remote learning institution designed for international students), and University of California at Berkeley—to provide innovative options for foreign students seeking next generation

higher education.  *See* Shorelight "Partner Universities" Page, https://shorelight.com/universities/ (last viewed on September 19, 2022).

14.     Shorelight provides an array of services to its partner universities, including: designing, implementing, and managing international student programs on site of the university's home campus and at venues around the world; face-to-face student concierge services (including admissions application assistance, dormitory room set up, personalized campus and community orientation for the student and his or her family, and visa application and interview guidance); enrollment management expertise; localized marketing; and—most importantly for this case— regulatory information guidance. *See* Shorelight's "Services" Webpages for Students and Universities, *available at* shorelight.com.

15.     A significant aspect of Shorelight's business operations includes its ability to keep its universities, students, and other stakeholders apprised of the latest, ever-changing immigration-related federal regulations by disseminating this information. Therefore, having access to more specific student visa approval/denial statistics is critical in order for Shorelight to inform members of Congress, the media, the universities with which it works, potential future university collaborators, prospective students, and the general public about government policies and practices affecting international students and U.S. universities.

16.     Moreover, Shorelight has a substantial due process interest in obtaining this data. Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process in order to make multi-million dollar decisions about which international students to invest in and recruit from around the world.  This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars in the recruitment of students from areas where they are unlikely to obtain visas.

17.     Defendant, the U.S. Department of State, is a federal agency within the meaning of FOIA (*see* 5 U.S.C. § 552(f)(1)) and headquartered in Washington, D.C. Defendant has possession, custody, and control of the records and data to which Plaintiff seeks access.

## STATEMENT OF FACTS

18.     Generally, a citizen of a foreign country who wishes to enter the United States to study must first obtain a student visa in order to legally study in the United States.  A student seeking to study at a college, university, or a language training program must obtain what is known as an "F-1" visa, which is named after the section of the Immigration and Nationality Act authorizing the issuance of student visas.  *See* 8 U.S.C. § 1101(a)(15)(F)(i).

19.     In order for a foreign student to obtain a visa to study in the United States, they must apply to, and be accepted by, a school approved by the U.S. Department of Homeland Security to accept foreign students. After the DHS-approved school accepts the student's enrollment, the school issues the student a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status. *See Student Visa Overview*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited September 19, 2022); *see also Students and the Form I-20*, U.S. Dep't of Homeland Security, Study in the States, *available at* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited September 19, 2022).

20.     After the student receives a Form I-20, the student may then apply at a U.S. Embassy or Consulate for an F-1 student visa.  At the visa interview, a consular officer interviews the student to determine whether the student should be granted a visa to study in the United States.

21.     U.S. Department of State recently changed its methodology for calculating its non-

immigrant visa data beginning in the Fiscal Year (FY) 2019 annual Report of the Visa Office and continuing with FY 2020 data, to reflect the greater access to application-level data attained during FY 2019. Per the U.S. Department of State's Bureau of Consular Affairs, this new methodology more accurately reflects final outcomes from the visa application process during a specified reporting period.  The new methodology follows visa applications, including updates to their status (i.e., issued or refused), which could change as the fiscal year progresses, or result in slight changes in data for earlier years. *See Visa Data Reporting: Updating the Methodology*, available at https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2019AnnualReport/Visa_counts_methods_differences_vF.pdf (last visited September 19, 2022); *see also Monthly Nonimmigrant Visa Issuance Statistics*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html (last visited September 19, 2022).

22.     The  U.S. Department of State already reports, on a monthly basis, the sum-total number of F-1 student visas "issued" by post and nationality as a result of these interviews.  *See* Report of the Visa Office, *Monthly Nonimmigrant Visa Issuances Statistics*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html (last visited September 19, 2022).

23.     In addition, the U.S. Department of State also currently reports the worldwide sum-total number of F-1 student visas "issued" and "refused" annually.  *See* Report of the Visa Office, *Worldwide NIV Workload by Visa Category FY* 2021, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-

Immigrant-Statistics/NIVWorkload/FY2021NIVWorkloadbyVisaCategory.pdf    (last    visited
September 19, 2022).

24.    Despite issuing these two datasets described above in paragraphs 19 and 20, the
State Department does not publicly report the disaggregated "**refused**" data contained within the
yearly document so that it can provide, and make publicly available, **by post and nationality**, the
total number of F-1 student visas that were "**refused**" each month.  In fact, the State Department
*Report of the Visa Office 2021, Section XIX: Immigrant and Nonimmigrant Visa Ineligibilities (by
Grounds for Refusal Under the Immigration and Nationality Act): Fiscal Year 2021*, is the **only**
section of the annual report that does not make the data available. *See Report of the Visa Office,
Monthly Nonimmigrant Visa Issuances Statistics*, U.S. Dep't of State Bureau of Consular Affairs,
Travel.State.Gov,   *available   at*   https://travel.state.gov/content/travel/en/legal/visa-law0/visa-
statistics/annual-reports/report-of-the-visa-office-2021.html  (last  visited  September  19,  2021)
(evidencing that 18 of the 19 sections of the Report of the Visa Office 2020 (Sections I-XVIII)
provide at least one statistical table).

25.    That is why, on August 17, 2022, Shorelight requested F-1 student visa non-
immigrant **refusal** statistics **by post and nationality** for Fiscal Years 2021 through 2022 (year-to-
date). *See* **Exhibit A**, FOIA Request to State Department (dated August 17, 2022).

26.    Shorelight has requested this data because, based on the scope of its global
operations and its firsthand knowledge of the student visa adjudication process, Shorelight has
reason to believe that the visa refusal rate for F-1 student visas is significantly increasing in certain
countries and at certain times of the year in comparison to other countries and other times of the
year.

27.    Shorelight's request is not a remarkable, onerous, or resource-intensive request for
the State Department to fulfill.  Each year, the State Department publicly releases a document

titled: "ADJUSTED REFUSAL RATE - B-VISAS ONLY BY NATIONALITY," which provides the exact same non-immigrant visa refusal rate for *visitor's visas* by nationality. *See Adjusted Refusal Rate - B-Visas Only By Nationality, Fiscal Year 2021*, U.S. Dep't of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/RefusalRates/FY21.pdf  (last visited September 19, 2022).

28.     Collecting and organizing the voluminous statistics for visitor's visas is far more time-consuming and resource-intensive than for student visas. In FY 2021, the State Department processed approximately 119 percent more visitor visa applications than student visa applications. *See Worldwide NIV Workload by Visa Category FY* 2021, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY2021NIVWorkloadbyVisaCategory.pdf     (last    visited September 19, 2022) (evidencing the State Department processed a total of 979,573 B-1/B-2 visa applications and only 446,422 F-1 visa applications in FY 2021).

29.     Further, the fact that the State Department's annual Report of the Visa Office 2021 includes a final Section XIX titled "Immigrant and Nonimmigrant Visa Ineligibilities (by Grounds for Refusal Under the Immigration and Nationality Act)" supports the fact that this data is already collected and organized in a manner ready for public use. *See supra* ¶ 22.

30.     Finally, to be clear, Shorelight is only requesting data that is already in Defendant's immediate possession, and that simply disaggregates the numbers already contained and publicly reported in the "refused" column of the yearly statistics so that those numbers can be publicly available by post and nationality.  Shorelight effectively seeks the exact same statistics, in the exact same format, already reported for visitor's visas, but for F-1 student visas instead. This information is necessarily readily and easily available as there is no way DOS can report the monthly and yearly statistics without also collecting the "refused" data by nationality and post.

Moreover, U.S. Consulate officials have told Shorelight employees that this data is kept and is available to Consulate officials at each U.S. Embassy and Consulate.

*Shorelight's FOIA Request*

31.    On August 17, 2022, Plaintiff submitted a FOIA request (FOIA Case Number F-2022-11858) to DOS requesting F-1 Nonimmigrant Visa Refusal Statistics by Post and Nationality for Fiscal Year 2021 and for FY 2022.  *See* **Exhibit A**, FOIA Request to State Department (dated August 17, 2022).  This request is still pending although expedited processing was denied.   *See* **Exhibit B**, Ref: F-2022-11858, Freedom of Information Act Acknowledgement from State Department (dated August 22, 2022).

32.    On August 25, 2022, Plaintiff submitted a FOIA Appeal. *See* **Exhibit C**, FOIA Appeal to State Department (dated August 25, 2022).  This request is still pending although expedited processing was denied as part of the appeal.  *See* **Exhibit D**, Ref: A-2022-00371, Freedom of Information Act Appeal Response from State Department (dated September 16, 2022).

*Entitlement to Expedited Processing*

33.    Shorelight sought expedited processing of the DOS FOIA request pursuant to 5 U.S.C § 552(a)(6)(E)(i)(I), as implemented by 22 C.F.R. § 171.11(f)(2) and (3). Expedited processing shall be provided "in cases in which the person requesting the records demonstrates a compelling need . . . ." 5 U.S.C. § 552(a)(6)(E)(i)(I). To be considered  a "compelling  need," the requestor must demonstrate one of the following situations exists: (1) an "imminent threat to the life or physical safety of an individual"; (2) the information requested is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity"; or (3) nondisclosure of the requested information would "impair substantial due process rights or harm substantial humanitarian interests." 5 U.S.C. § 552(a)(6)(E)(v)(II); 22 C.F.R. 171.11(f).

34.     Shorelight's State Department FOIA request is "made by a person primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5. U.S.C. § 552(a)(6)(E)(v)(II); *see also* 22 C.F.R. § 171.11(f)(2) and (3).

35.     In addition, failure to release the information would impair substantial due process rights or harm substantial humanitarian interests. *See* 22 C.F.R. § 171.11(f)(3).  Shorelight has a substantial due process interest in obtaining this data because Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest in and recruit from around the world.  This data is critical to preventing public schools funded by U.S. taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas.

36.     Further, there is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request.  In fact, Shorelight is aware that members of the media, including the McClatchy Company, have also requested this data.

37.     Shorelight gathers information, exercises editorial discretion in selecting and organizing documents, and distributes the resulting work to members of Congress, members of the media, and public and private universities throughout the United States. Media outlets regularly publish the information Shorelight provides.

38.     The data that Shorelight seeks through the FOIA request is directly related to the integrity and viability of the student visa process—an issue which has been a primary focus of news coverage for the past weeks and months.

39.     The subject of Shorelight's FOIA request also raises questions about the government's integrity that affect public confidence. The Government often responds to media requests regarding reductions in issuances of student visas by citing reasons other than an increased refusal rate.  This data is essential to uncovering whether an increased refusal rate is the main reason for reductions in the numbers of student visa issuances in certain countries.

*State Departments Response*

40.     On August 17, 2022 the same day Plaintiff's FOIA request was submitted via fax to DOS, DOS's Requestor Communications Branch confirmed receipt of Plaintiff's submission via email at send@mail.efax.com. *See* **Exhibit F**, FOIA Fax confirmation receipt.

41.     On August 22, 2022, in response to Plaintiff's August 17, 2022 FOIA request, DOS denied Plaintiff's request for expedited processing, claiming that the request "does not demonstrate a 'compelling need' for the requested information." *See* **Exhibit B**, FOIA Status Email Correspondence RE: Ref: F-2022-11858, Freedom of Information Act Acknowledgement (dated August 22, 2022). DOS further stated that they could not to respond within the 20 days provided by the statute due to "unusual circumstances," which they cited as "the need to search for and collect requested records from other Department offices or Foreign Service posts." *Id.* (quoting 5 U.S.C. § 552(a)(6)(B)(i)-(iii)).

*Shorelight's Appeal of Denial of Expedited Processing*

42.     On August 25, 2022, Plaintiff submitted a FOIA Appeal. *See* **Exhibit C**, FOIA Appeal to State Department (dated August 25, 2022).  This request remains pending, however, expedited processing was denied as part of the appeal.  *See* **Exhibit D**, Ref: A-2022-00371, Freedom of Information Act Appeal Response from State Department (dated September 16, 2022).

43.     In its appeal, Shorelight further elaborated on the reasons that it is entitled to expedited processing, including: (i) a description of Shorelight's proven track record of disseminating information to Congress and the media for the purpose of informing the public about the government operations and activities regarding student visas; and (ii) further explanation of the critical due process urgency to better understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. *See id*.

44.     On September 16, 2022, DOS sent Plaintiff a formal letter denying Plaintiff's request for expedited FOIA processing appeal. *See* **Exhibit D**, Ref: A-2022-00371, Freedom of Information Act Appeal Response from State Department (dated September 16, 2022).

45.     The State Department's denial letter was conclusory and devoid of any detailed explanation. Though DOS cited to a single regulation which outlines the requirements in order to obtain expedited FOIA processing, DOS did not explain why Shorelight failed to meet any of these requirements. *See id* (citing 22 C.F.R. 171.11(f)). *See id.*

*Exhaustion of Administrative Remedies*

46.     Shorelight has exhausted its administrative remedies and seeks immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(E)(iii); *see also* **Exhibit D**, Ref: A-2022-00371, Freedom of Information Act Appeal Response from State Department (dated September 16, 2022) at p. 2 ("This [letter] represents the Department's final determination on expedited processing and exhausts all administrative remedies available to you. As you may know, you have the right to seek judicial review of this determination under 5 U.S.C. Section 552 (a)(4)").

47.     Moreover, Defendant's failure to make a determination concerning Plaintiff's FOIA request within the statutory time period constitutes a constructive denial of such request, and Plaintiff is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

## COUNT I

### Violation of FOIA, 5 U.S.C. § 552
### Agency's Wrongful Denial of Expedited Processing of FOIA Request

48.     Shorelight repeats the allegations in the forgoing paragraphs and incorporates them as though fully set forth therein.

49.     Shorelight properly requested records within the possession, custody, and control of DOS on an expedited basis.

50.     DOS is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.11(f)(2) and (3).

51.     Shorelight has, as a core mission of its business, a practice of disseminating information to the public, the Congress, the media, universities, and students regarding the student visa process. There is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request, such that expedited processing is appropriate under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 22 C.F.R. § 171.11(f)(2) and (3).

52.     Shorelight also has a substantial due process interest in obtaining this data because it and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas. *See* 22 C.F.R. § 171.11(f)(2) and (3).

53.     DOS's failure to grant expedited processing violates FOIA and DOS regulations. *See* 22 C.F.R. § 171.11(f)(2) and (3).

54.     Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's FOIA request on an expedited basis.

55.     The records sought by Shorelight's FOIA request relate to a matter of widespread and exceptional media interest in which there exits possible questions concerning the government's integrity and due process that affect public confidence, such that expedited processing is appropriate under and 22 C.F.R. § 171.11(f)(2) and (3).

56.     DOS's failure to grant expedited processing under 22 C.F.R. § 171.11(f)(2) and (3) violates FOIA and DOS regulations.

57.     Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's FOIA request.

<u>**COUNT II**</u>

<u>**Violation of FOIA, 5 U.S.C. § 552**</u>
<u>**Agency's Failure to Respond to FOIA Request Within 20 Days**</u>

58.     Plaintiff repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.     By failing to respond with the information Plaintiff requested within the statutorily mandated time  period of 20 business days (which may be extended for an additional 10 business days in the event that the agency notifies the requester in writing of the existence of "unusual circumstances"), DOS has violated its statutorily mandated obligations under FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, to take  reasonable steps to release all reasonably segregatable nonexempt information, and to not withhold responsive records. *See* 5 U.S.C. § 552(a)(6); *see also* 22 C.F.R. § 171.11(f)(4).

60.     Plaintiff is being irreparably harmed by DOS's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless DOS is compelled to comply with the FOIA.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

(1) order Defendant to expedite the processing of Shorelight's FOIA request submitted on August 17, 2022;

(2) order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to discovery of records responsive to Plaintiff's FOIA request;

(3) order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA request and a Vaughn index of any responsive records withheld under a claim of exemption;

(4) enjoin Defendant from continuing to withhold any and all nonexempt records responsive to Plaintiff's FOIA request;

(5) award Plaintiff attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) grant Plaintiff such other relief as the Court deems just and proper.

Dated: September 21, 2022                          Respectfully submitted,

                                                   /s/ Leon Fresco
                                                   LEON FRESCO
                                                   HOLLAND & KNIGHT LLP
                                                   800 17th Street NW, Suite 1100
                                                   Washington, DC 20006
                                                   Telephone: (202) 469-5129
                                                   Fax: (202) 955-5564
                                                   Email: leon.fresco@hklaw.com